UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEBRA A. WANZO,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

                              Defendant.

CASE NO.  10-CV-5472-BHS-JRC

REPORT AND RECOMMENDATION

Noted for June 3, 2011,

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976).  Plaintiff has filed an opening brief in this matter (ECF No. 11), and defendant has filed a response (ECF No. 13).

When applying for disability, plaintiff has the burden of proving that any claimed impairments have more than a minimal effect on her ability to conduct basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a).  While plaintiff has proven that she suffers from a variety of medical conditions, and from some severe impairments, she failed to prove that any of the impairments challenged here as severe had more than a minimal effect on her ability to work.

1  For this reason, and because the ALJ's findings are without legal error and supported by

2  substantial evidence in the record as a whole, this Court recommends that the ALJ's decision be

3  affirmed.

4                                              BACKGROUND

5

6          Plaintiff  DEBRA A. WANZO was 45 years old when she filed for disability benefits (Tr.

7  59). Although plaintiff was employed in six different jobs that lasted less than four months

8  between April, 1994 and June, 2000, plaintiff has over seven years of experience as a dental

9  assistant, through December, 2000 (Tr. 94). It appears from the record that three of plaintiff's

10  short-term jobs were second jobs (Tr. 94, 613). For example, from March, 2000 through June,

11  2000, plaintiff reported working 62 hours per week (Tr. 94-96). Similarly, from June, 1997

12  through September, 1997, plaintiff reported working 57 hours per week, including the additional

13  hours from her job as a housekeeper (Tr. 94-95, 98). Although plaintiff alleges disability onset of

14  December 17, 2000 (Tr. 72, 81), she worked as a nurse assistant from January or February, 2001

15  until April or May, 2001 (Tr. 20, 94). The ALJ found this to be an unsuccessful work attempt

16  (Tr. 20). According to plaintiff, she stopped working at her nurse assistant job because "I had to

17  have surgery on my hands. I could no longer do my job duties because I had to roll the patients"

18  (Tr. 82).

19

20                                         PROCEDURAL HISTORY

21

22          Plaintiff filed an application for disability insurance benefits in 2002 (ECF No. 32, 67-

23  70). On January 2, 2003, plaintiff's claim initially was denied (Tr. 53-56).  It does not appear

24  from the record that plaintiff requested reconsideration of this finding.

25          On March 1, 2006, plaintiff protectively filed applications for Title II disability insurance

26  benefits and Title XVI supplemental security income benefits (Tr. 18, 31, 59-61, 64-66). Her

REPORT AND RECOMMENDATION - 2

claims were denied initially in April, 2006 and May, 2006, and were denied following

reconsideration in August, 2006 (Tr. 18, 30, 41-42, 43, 44-46, 47-52). Plaintiff requested a

hearing in August, 2006 (Tr. 40), which was held on September 23, 2008 before Administrative

Law Judge M.J. Adams (hereinafter "the ALJ") (Tr. 593-632). Although the record erroneously

indicates the name of plaintiff's counsel, plaintiff was represented at the hearing by Tara Jayne

Reck (see ECF No. 11, p. 3).

On November 4, 2008, the ALJ issued a written decision unfavorable to plaintiff (Tr. 15-

17, 18-29). The ALJ found that plaintiff suffered from the severe impairments of degenerative

disc disease of the cervical spine, bilateral DeQuervain's tenosynovitis, degenerative disc and

joint disease of the lumbar spine, and adjustment disorder with depressed mood (Tr. 21). The

ALJ found that plaintiff did not have "an impairment or combination of impairments that meets

or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1"

(Tr. 23).

The ALJ found that plaintiff had the residual functional capacity to perform light work,

with certain specified limitations (Tr. 25). Subsequently, the ALJ found that plaintiff could

perform her past relevant work as a housekeeper and was "not under a disability as defined in the

Social Security Act, at any time from December 17, 2000, through the date of this decision (Tr.

29).

Plaintiff requested review on December 30, 2008 (Tr. 14; see also Tr. 13), and the

Appeals Council denied review on May 8, 2010 (Tr. 5-7), making the November 4, 2008 written

decision by the ALJ the final decision by the defendant subject to judicial review. See 20 C.F.R.

§ 404.981.

1     In her opening brief, plaintiff contends that the ALJ erred in: (1) failing to conclude that

2  some of plaintiff's impairments were not severe: (2) failing to find that any of plaintiff's severe

3  impairments or combination of impairments met or equaled one of the listed impairments in 20

4  C.F.R. Part 404, Subpart P, Appendix 1; (3) finding that plaintiff retained the residual functional

5  capacity to perform light work; and (4) finding that plaintiff was capable of performing her past

6  relevant work as a housekeeper (ECF No. 11, pp. 2, 5-10, 10-13, 13-14, 14-16). Plaintiff also

7  contends that defendant's ultimate decision is not based on substantial evidence (id., pp. 2, 15-

8  16). Although defendant filed a response to plaintiff's opening brief on November 17, 2010

9  (ECF No. 13), plaintiff has not filed any reply.

10                              STANDARD OF REVIEW

11     Plaintiff bears the burden of proving disability within the meaning of the Social Security

12  Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing

13  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the

14  "inability to engage in any substantial gainful activity" due to a physical or mental impairment

15  "which can be expected to result in death or which has lasted, or can be expected to last for a

16  continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

17  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that

18  plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and

19  work experience, engage in any other substantial gainful activity existing in the national

20  economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094,

21  1098-99 (9th Cir. 1999).

22     Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

23  social security benefits if the ALJ's findings are based on legal error or not supported by

REPORT AND RECOMMENDATION - 4

substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402 U.S. 389, 401 (1971).

DISCUSSION

1.   The ALJ properly assessed plaintiff's severe impairments, including left dorsal wrist ganglion, carpal tunnel syndrome, right trigger index finger, leukopenia, postural dysfunction, sleep disturbance, pain disorder, depression, and mood disorder.

Step-two of the administration's evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on

1  an individual[']s ability to work.'" Smolen, supra, 80 F.3d at 1290 (quoting Yuckert v. Bowen,

2  841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling "SSR" 85-28)).

3      If a claimant's impairments are "not severe enough to limit significantly the claimant's

4  ability to perform most jobs, by definition the impairment does not prevent the claimant from

5  engaging in any substantial gainful activity." Bowen, supra, 482 U.S. at 146. Plaintiff bears the

6  burden to establish by a preponderance of the evidence the existence of a severe impairment that

7  prevented performance of substantial gainful activity, and that this impairment lasted for at least

8  twelve continuous months.  20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a),

9  416.912(a); Bowen, supra, 482 U.S. at 146; see also Tidwell v. Apfel, 161 F.3d 599, 601 (9th

10  Cir. 1998) (citing Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's

11  burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary

12  may require.'" Bowen, 482 U.S. at 146 (quoting 42 U.S.C. § 423(d)(5)(A)) (citing Mathews v.

13  Eldridge, 424 U.S. 319, 336 (1976)); see also McCullen v. Apfel, 2000 U.S. Dist. LEXIS 19994

14  at *21 (E.D. Penn. 2000) (citing 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505, 404.1520).

15  **a.  Plaintiff's left dorsal wrist ganglion**

16      Regarding plaintiff's left dorsal wrist ganglion, the ALJ included the following in his

17  written decision:

> On August 30, 2004, examination revealed a 14 cm cystic lesion over the
> dorsum of [plaintiff]'s left wrist (internal citation to Exhibit 13F; p25). On
> November 16, 2004, Alan B. Thomas, M.D., performed a left hand dorsal wrist
> ganglion excision with exploration of the superficial branch of the radial nerve,
> neurolysis of that nerve, release of the first extensor compartment, and a
> Zancoli type procedure with excision of accessory abductor pollicis longus
> tendons (internal citation to exhibit 13F; p22). On January 3, 2005, [plaintiff]
> demonstrated excellent ulnar deviation. She still had mild swelling about the
> dorsal aspect of the wrist (internal citation to Exhibit 13F; p16). On October 5,
> 2005, Dr. Thomas reported that there appeared to be a recurrence of the left
> dorsal wrist ganglion, but there was no additional tenderness in that area
> compared to other areas of the hands and wrists (internal citation to Exhibit

13F; p10). He did not recommend further surgery. I find that [plaintiff]'s left dorsal writs ganglion did not significantly limit her functioning for 12 continuous months and is therefore not a severe impairment.

(Tr. 23).

Plaintiff contends that it was legal error for the ALJ to fail to find severe her left dorsal wrist ganglion, and cites plaintiff's testimony at her hearing regarding pain (see Opening Brief, ECF No. 11, p. 7 (*citing* Tr. 616-619)). The Court notes plaintiff's testimony, but also notes that the ALJ found that "the evidence supports a finding that [plaintiff's] subjective complaints are exaggerated" (Tr. 26). The ALJ noted that "[o]n June 17, 2004, Dr. Zhong reported that, subjectively, [plaintiff] complained of a severe degree of upper extremity pain . . . . [h]owever, the doctor observed that there were no objective findings to support the complaints of severe pain" (id. (*citing* Tr. 467)). The ALJ also noted that "Dr. Chong reported that [plaintiff] had some objective findings on a cervical MRI scan, but did not have concordant objective findings on physical examination" (id. (*citing* Tr. 338)). The Court notes that Dr. Chong also reported on January 23, 2003 that plaintiff's "history is also not particularly important with her MRI findings" (Tr. 338). The Court observes that in addition to the citations provided by the ALJ regarding plaintiff's credibility, "severe symptoms magnification" appears to have been a common assessment among plaintiff's examining physicians (see, e.g., Tr. 431, 439). Plaintiff has not challenged the ALJ's evaluation of plaintiff's testimony and credibility in this appeal.

Plaintiff also contends that "[b]ecause the condition affects [plaintiff]'s wrist use, it constitutes a severe impairment" (ECF No. 11, p. 7). Plaintiff provides no citation for this assertion (see id.). In addition, plaintiff makes no argument regarding how plaintiff's left wrist ganglion affects plaintiff's ability to conduct basic work activities. However, pursuant to the relevant federal regulations, an impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a). In addition,

plaintiff has not cited any evidence in the record demonstrating that it was improper for the ALJ to conclude that plaintiff's left dorsal wrist ganglion did not "significantly limit" her ability to conduct basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a); see also Bowen, supra, 482 U.S. at 146 (if a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity"). Although plaintiff bears the burden of establishing by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity, plaintiff here argues that the ALJ should have found plaintiff's left wrist ganglion severe because plaintiff's partially discredited testimony suggests that she suffered pain from this impairment, and because this condition "affects [plaintiff's] wrist use".  See 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); Bowen, supra, 482 U.S. at 146; see also (ECF No. 11, p. 7). The Court is not convinced by plaintiff's argument."  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)

Plaintiff also contends that her left wrist ganglion "should have been considered when determining her residual functional capacity and ability to work" (ECF No. 11, p. 7). However, the Court notes that the ALJ appears to have considered plaintiff's left wrist ganglion when determining plaintiff's residual functional capacity: "In making [the residual functional capacity] finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence another evidence" (Tr. 25).

Based on a review of the relevant record, including the medical evidence supplied by Dr. Alan B. Thomas, M.D., the Court finds proper the ALJ's failure to find that plaintiff's left wrist ganglion was a severe impairment (see, e.g., Tr. 402 (discussing plaintiff's subjective reports of "severe disabling pain," his objective observation that the area around the left wrist ganglion did

not have any "additional tenderness," and indicating his plan to release plaintiff to "a sedentary

job")).

### b.  Plaintiff's carpal tunnel syndrome

Plaintiff's arguments regarding whether or not her carpal tunnel syndrome was severe

include the following:

> [Plaintiff]'s bilateral upper extremity pain has continued over the years, despite
> attempts at surgical intervention. In [April,] 2006, Dr. Alan Thomas suggested
> that [plaintiff] possibly had left wrist carpal tunnel syndrome (internal citation
> to Tr. 393). It is unclear whether this diagnosis was ever ruled out after that
> time. However, this condition should be taken into consideration when
> determining [plaintiff]'s severe impairments, especially because of [plaintiff]'s
> own description of how her hand symptoms and chronic pain continue to
> impact her activities of daily living (internal citation to Tr. 615-22).
> Accordingly, this condition should have been considered when determining her
> residual functional capacity and ability to work.

(ECF No. 11, p. 7).

Regarding plaintiff's carpal tunnel syndrome, the ALJ included the following in his

written decision:

> On May 23, 2002, Tinel's testing was negative (internal citation to exhibit 6F;
> p1 [Tr. 292]). On December 19, 2002, an EMG and nerve conduction study
> was performed to rule out carpal tunnel syndrome, ulnar entrapment
> neuropathy, and brachial plexopathy (internal citation to exhibit 8F; p5).
> Findings were within the normal range (internal citation to exhibit 8F; p4).
> Joseph D. Sueno, M.D., reported [plaintiff] had numbness with no carpal
> tunnel syndrome, no signs of ulnar entrapment neuropathy, and no brachial
> plexopathy (internal citation to exhibit 8F;p1). On April 27, 2006, George A.
> Pruden, P.A.-C, reported that Tinel's and Phalen's appeared to be positive
> (internal citation to 13F; p1). However, [plaintiff] underwent an independent
> medical examination on May 1, 2006, and Tinel's was negative at the elbows
> and wrists (internal citation to exhibit 14F; p26). I therefore find that carpal
> tunnel syndrome is not a medically determinable impairment.

(Tr. 23).

Again, plaintiff makes no argument regarding how plaintiff's carpal tunnel syndrome

affects plaintiff's ability to conduct basic work activities, even though pursuant to the relevant

REPORT AND RECOMMENDATION - 9

1   federal regulations, an impairment is "not severe" if it does not "significantly limit" the ability to

2   conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Instead, plaintiff contends

3   that her carpal tunnel was a severe impairment because "of [plaintiff]'s own description of how

4   her hand symptoms and chronic pain continue to impact her activities of daily living." (ECF No.

5   11, p. 7.) As already discussed, the ALJ discounted plaintiff's credibility, and plaintiff has not

6   challenged this finding in this appeal, see supra, p. 6. In addition, plaintiff must demonstrate that

7   her impairment affects her ability to conduct basic work activities, therefore a finding that an

8   impairment "impact[s] her activities of daily living," (id.), even if true, is not sufficient to

9   demonstrate that the impairment is severe pursuant to the relevant federal regulations. See 20

10  C.F.R. §§ 404.1521(a), 416.921(a); see also Bowen, supra, 482 U.S. at 146 (if a claimant's

11  impairments are "not severe enough to limit significantly the claimant's ability to perform most

12  jobs, by definition the impairment does not prevent the claimant from engaging in any

13  substantial gainful activity").

14          Finally, plaintiff contends that her carpal tunnel syndrome "should have been considered

15  when determining her residual functional capacity and ability to work" (ECF No. 11, p. 7).

16  Again, however, it appears from the text of the ALJ's decision that plaintiff's carpal tunnel was

17  considered when the ALJ determined plaintiff's residual functional capacity: "In making [the

18  residual functional capacity] finding, I have considered all symptoms and the extent to which

19  these symptoms can reasonably be accepted as consistent with the objective medical evidence

20  another evidence" (Tr. 25).

21          Based on a review of the relevant record, including the medical evidence supplied by Dr.

22  Joseph D. Sueno, M.D., (see Tr. 295 (diagnosing "numbness with no carpal tunnel syndrome");

23  see also Tr. 292 ("Tinel's testing and the carpal and cubital tunnels negative")), as well as that

supplied by Drs. William Furrer, Jr., M.D., orthopedic surgeon, and John A. Maxwell, M.D., neurosurgeon (see Tr. 444 (objective examination finding of "Tinel's sign is negative at the elbows [and] at the wrists"), 445 (conclusion that "[plaintiff]'s physical examination is extremely functional"); see also, Tr. 428-46), the Court finds proper the ALJ's failure to find that plaintiff's carpal tunnel syndrome was a severe impairment.

### c. Plaintiff's right trigger index finger

Regarding plaintiff's right trigger index finger, the ALJ included the following in his written decision:

> On October 3, 2001, Douglas Hassan, M.D., noted evidence of triggering to the right index finger. He injected the trigger digit with Depo-Medrol and lidocaine (internal citation to Exhibit 8F: p19 [Tr. 313]). On November 9, 2001, Dr. Hassan reported that there was no further evidence of triggering in the right index finger (internal citation to Exhibit 8F; p14 [Tr. 308]). This condition resolved within approximately one month of being diagnosed and is therefore not a severe impairment.

(Tr. 22).

Plaintiff's argument regarding the severe nature of her right trigger index finger includes the following:

> Here the exhibit file includes information that [plaintiff] has been diagnosed with right trigger index finger (internal citation to Tr. 344). Because her trigger finger condition impacts [plaintiff]'s ability to effectively use her finger, her right trigger index finger should be considered a severe impairment and should be factored into her residual functional capacity.

(ECF No. 11, p. 8).

The Court already has discussed the fact that the ALJ explicitly indicated that he had considered all of plaintiff's symptoms when determining her residual functional capacity (see supra pp.7-8, 9-10; see also Tr. 25). The Court also already has discussed the fact that pursuant to the relevant federal regulations, it is plaintiff's burden to demonstrate that an impairment "significantly limit[s]" the ability to conduct basic work activities, not demonstrate that it

"affects" her use of that area, or that it "impact[s] her activities of daily living." See supra pp. 7, 9; see also 20 C.F.R. §§ 404.1521(a), 416.921(a). Plaintiff has not presented sufficient evidence that her right trigger index finger has had more than a minimal effect on her ability to conduct basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a); see also Smolen, supra, 80 F.3d at 1290; Bowen, supra, 482 U.S. at 146 (if a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity").

Based on a review of the relevant record, the Court concludes that the ALJ's failure to find that plaintiff's right trigger index finger was a severe impairment was proper.

### d. Plaintiff's leukopenia

Regarding plaintiff's leukopenia, the ALJ included the following in his written decision:

> In February of 2002 laboratory results showed a low white blood cell count (internal citation to Exhibit 9f: p1, 5, 13). On March 19, 2002, Richard Rynes, M.D., reported that the low white count was probably normal for an African-American (internal citation to Exhibit 9F; p8). On June 6, 2002, [plaintiff]'s white blood cell result was normal (internal citation to Exhibit 11f: p9). On July 9, 2002, [plaintiff]'s white blood cell result was low and Dr. Rynes assessed leukopenia (internal citation to Exhibit 9f: p2, 5). The medical record does not mention leukopenia after early 2003. No doctor of record opined that [plaintiff] had any functional restriction arising from leukopenia. I therefore find that it is not a severe impairment.

(Tr. 23).

First, the Court notes that plaintiff does not contest the ALJ's finding that "[n]o doctor of record opined that [plaintiff] had any functional restriction arising from leukopenia" (see Tr. 23). Instead, plaintiff contends that "[plaintiff] has been diagnosed with leukopenia and it should be considered a severe impairment and factored into any consideration of whether she is capable of successfully engaging in substantial gainful employment" (ECF No. 11, p. 8). As noted above, the ALJ explicitly indicated that he had considered all of plaintiff's symptoms when determining

her residual functional capacity (see supra pp.7-8, 9-10; see also Tr. 25). Again, the relevant

standard for determining whether or not an impairment is severe pursuant to the regulations

requires a consideration of whether or not the impairment "significantly limit[s]" the ability to

conduct basic work activities.  See supra pp. 7, 9, 11; see also 20 C.F.R. §§ 404.1521(a),

416.921(a). This is plaintiff's burden.  And the ALJ correctly noted that plaintiff failed to meet

this burden.  Simply because plaintiff "has been diagnosed with leucopenia" does not mean that

this condition "should be considered a severe impairment" (see Tr. 23).

Based on a review of the relevant record, the Court concludes that the ALJ's failure to

find that plaintiff's leukopenia was a severe impairment was proper.

**e.  Plaintiff's postural dysfunction**

Regarding plaintiff's postural dysfunction, the ALJ included the following in his written

decision:

> On May 23, 2002, a physical therapist reported [plaintiff] presented with
> findings consistent with postural dysfunction (internal citation to Exhibit 6F;
> p2). The physical therapist saw [plaintiff] on only one occasion. I do not see
> that any other clinician assessed postural dysfunction. I therefore find that
> postural dysfunction is not a severe impairment.

(Tr. 23).

Regarding this impairment, plaintiff contends that she "has [] been diagnosed with

postural dysfunction and associated soft tissue changes," and that "[t]his condition affects her

posture and ability to effectively use her shoulders with unobstructed range of motion" (ECF No.

11, p. 8). According to plaintiff, "[a]s a result, it constitutes a severe impairment" (id. at 8-9).

Plaintiff has not presented sufficient evidence that her alleged postural dysfunction has

more than a minimal effect on her ability to conduct basic work activities. See 20 C.F.R. §§

404.1521(a), 416.921(a); see also Smolen, supra, 80 F.3d at 1290; Bowen, supra, 482 U.S. at 146

1
2
3

(if a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity").

4
5
6
7

Based on a review of the relevant record, and for the reasons already discussed, the Court concludes that the ALJ's failure to find that plaintiff's postural dysfunction was a severe impairment was proper.

8

### f.  Plaintiff's sleep disturbance

9
10
11

Regarding plaintiff's sleep disturbance, pain disorder (see infra section 1.g), depression and mood disorders (see infra section 1.h), the ALJ included the following in his written decision:

12
13
14
15
16
17
18
19

> A report dated June 20, 2003, shows [plaintiff] was taking Trazodone for sleep disturbance (internal citation to Exhibit 15F; p78). On July 25, 2003, Jeffrey L. Okey, Ph.D., reported that [plaintiff] endorsed significantly and quickly improved mood since starting Celexa (internal citation to Exhibit 15F; p66 [Tr. 512]). On August 8, 2003, Dr. Okay listed diagnoses of adjustment disorder with depressed mood and pain disorder associated with both psychological factors and a general medical condition. He rated [plaintiff's] Global Assessment of Functioning (GAF) at 65. Dr. Okey reported [plaintiff] was taking Effexor, which seemed to be working quite effectively (internal citation to Exhibit 15F; p51, 52). At that point it was determined that [plaintiff] was fixed and stable and had reached the point of maximum medical improvement (internal citation to Exhibit 15F; p51).

20

(Tr. 21).

21
22

Plaintiff's argument regarding the severity of her sleep disturbance includes the following:

23
24
25

> Because [plaintiff] is unable to rest effectively, her sleep disturbance affects her ability to fully participate in the activities of daily living. As a result, her sleep disturbance constitutes a severe impairment and should be taken into consideration when determining her residual functional capacity.

26

REPORT AND RECOMMENDATION - 14

(ECF No. 11, p. 9). For the reasons already discussed, it is apparent that there is little merit in plaintiff's argument, see supra, sections 1.a-f. Plaintiff does not contend explicitly, much less demonstrate, that her alleged sleep disturbance has more than a minimal effect on her ability to conduct basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a); see also Smolen, supra, 80 F.3d at 1290; Bowen, supra, 482 U.S. at 146. The Court also notes that on June 20, 2003, Dr. Michelle F. Zhong, M.D. indicated plaintiff's subjective report that she "has made improvement on her disturbed sleeping pattern with Trazodone treatment." (Tr. 524).

Based on a review of the relevant record, the Court concludes that the ALJ's failure to find that plaintiff's sleep disturbance was a severe impairment was proper.

**g.  Plaintiff's pain disorder**

Regarding plaintiff's pain disorder, in addition to the discussion of this impairment in the selection of the ALJ's written decision above, see supra, section 1.f, the ALJ included the following in his written decision:

> [Plaintiff] was diagnosed with pain disorder associated with both psychological factors and a general medical condition based on an MMPI profile showing elevations on scales characteristic of an individual with a significant to extreme degree of somatic pain and disability focus. However, the validity scale of the test was invalid (internal citation to Exhibit 14F; p3). I therefore find that pain disorder associated with both psychological factors and a general medical condition is not a medically determinable impairment.

(Tr. 23).

Plaintiff notes that she has "been assessed with global assessment of functioning (GAF) scores ranging from 55 to 65  . . . .  indicat[ing] moderate symptoms OR any moderate difficulty in social, occupational or school functioning" (ECF No. 11, p. 9). The Court observes that these are not indications of severe symptoms or severe difficulty in functioning.

Plaintiff contends that "because her mental health conditions affect her ability to engage in some basic activities of daily living, they all constitute severe impairments and must be taken

1    into consideration when determining her residual functional capacity and ability to work" (<u>id.</u> at

2    pp. 9-10). A review of the Court's previous discussion reveals the errors in this contention <u>see</u>

3    <u>supra</u>, sections 1.a-g.

4         Finally, plaintiff contends that "[b]ecause the Commissioner's decision fails to address

5    these diagnosed and documented [mental health] conditions, at a minimum this matter must be

6    remanded" (ECF No. 11, p. 10). The Court already has cited the written decision of the ALJ, in

7    which he addresses plaintiff's sleep disturbance, depressed mood and adjustment disorder, as

8    well as plaintiff's pain disorder, <u>see supra</u>, sections 1.f-g. Therefore, the Court finds that

9    plaintiff's assertion clearly unfounded.

10        **h.   Plaintiff's depression and mood disorder**

11        The ALJ's discussion of plaintiff's depression and mood disorder includes the findings,

12   delineated above (<u>see supra</u> section 1.f) that "[o]n July 25, 2003, Jeffrey L. Okey, Ph.D., reported

13   that [plaintiff] endorsed significantly and quickly improved mood since starting Celexa," that

14   "Dr. Okey reported [plaintiff] was taking Effexor, which seemed to be working quite effectively"

15   and "that [plaintiff] was fixed and stable" (Tr. 21). The Court also notes the diagnostic

16   impression by a group of medical sources, doctors and other sources that plaintiff's "mood now

17   in preliminary state of significant improvement/remission" (Tr. 498).

18        In addition, although plaintiff contends that the ALJ erred in failing to find plaintiff's

19   depression and mood disorder as part of her severe impairments, defendant has pointed out that

20   the ALJ found plaintiff's "adjustment disorder with depressed mood" to be severe (Tr. 21).

21   Defendant argues in his response that "the ALJ's residual functional capacity, based [in part] on

22   the [] mental impairments assessed by the ALJ, accounted for moderate limitations in the area of

23   mental functioning" (ECF No. 13, p. 11). Defendant also argues that "if this Court finds error in

REPORT AND RECOMMENDATION - 16

the ALJ's assessment at step two, it was harmless" (id.). According to defendant, the ALJ found plaintiff's depression and mood disorder to be severe, considered the limitations resulting from these impairments when he determined plaintiff's residual functional capacity, and to any extent that he did not so find and consider, the error was harmless (see id.). Plaintiff has not provided any reply to these contentions by defendant, and the Court finds them persuasive based on the relevant record as a whole in this matter.

For the aforesaid reasons, the Court concludes that the ALJ did not err when evaluating plaintiff's severe impairments.

2. The ALJ properly found that none of plaintiff's severe impairments or combination of impairments met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step-three of the administrative process, if the administration finds that the claimant has an impairment(s) that has lasted or can be expected to last for not less than 12 months, and is included in Appendix 1 of the Listings of Impairments, or is equal to a listed impairment, the claimant will be considered disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(d).   The claimant bears the burden of proof regarding whether or not she "has an impairment that meets or equals the criteria of an impairment listed" in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings"). Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). In addition, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Id. at 683(citing Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001).

1    Although plaintiff provides the Court with little detail regarding her argument that the

2    ALJ erred in failing to find that plaintiff's impairments, in combination, met or medically

3    equaled one of the listed impairments, she contends that the ALJ should have found her

4    impairments to have met or medically equaled Listing 1.02, major dysfunction of a joint, and

5    12.04, affective disorders.

6

7    **a. Listing for Impairment 1.02 Major dysfunction of a joint**

8    According to the Listings 1.02, major dysfunction of a joint is:

9
     Characterized by gross anatomical deformity (e.g. subluxation, contracture,
10   bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with
     signs of limitation of motion or other abnormal motion of the affected joint(s),
11   and with findings on appropriate medically acceptable imaging of joint space
     narrowing, bony destruction, or ankylosis of the affected joint(s). With:  . . .
12   B. Involvement of one major peripheral joint in each upper extremity (i.e.,
     shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross
13   movements effectively, as defined in 1.00B2c.

14   20 C.F.R. pt. 404, subpt. P, app. 1, 1.02. According to the relevant paragraph 1.00(B)(2)c:

15
     What we mean by inability to perform fine and gross movements effectively.
16   Inability to perform fine and gross movements effectively means an extreme
     loss of function of both upper extremities; i.e., an impairment(s) that interferes
17   very seriously with the individual's ability to independently initiate, sustain, or
     complete activities. To use their upper extremities effectively, individual must
18   be capable of sustaining such functions as reaching, pushing, pulling, grasping,
     and fingering to be able to carry out activities of daily living. Therefore,
19   examples of inability to perform fine and gross movements effectively include,
     but are not limited to, the inability to prepare a simple meal and feed oneself,
20   the inability to take care of personal hygiene, the inability to sort and handle
     papers or files, and the inability to place files in a file cabinet at or above waist
21   level.

22   20 C.F.R. pt. 404, subpt. P, app. 1, 100(B)(2)c.

23

24   Plaintiff contends that "[w]hile it is not entirely clear whether [plaintiff]'s tenosynovitis

25   meets all of the requirements of listing 1.02, it is clear from the medical records that this

26   condition equals the requirements of this listing because it involves both of [plaintiff's] upper

REPORT AND RECOMMENDATION - 18

extremities, primarily at the wrist level (as noted above) and results in her inability to perform reaching, handling (gross manipulation), and fingering (fine manipulation) (internal citation to Tr. 266)" (ECF No. 11, p. 13).

Although plaintiff cites page 266 of the administrative record, the subsequent page probably is the intended citation, yet even the correct citation only demonstrates that Ms. Janina Oestreich opined that plaintiff suffered some limitation regarding reaching, handling, and fingering (see Tr. 267). Even Ms. Oestreich opined that plaintiff's "manipulative limitations" required that she be limited to "occasional" reaching, handling, and fingering (Tr. 271). She did not opine, and plaintiff has failed to demonstrate, as set forth by the applicable regulations, that she suffered from "an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with [her] ability to independently initiate, sustain, or complete activities," or which rendered plaintiff unable to "to prepare a simple meal and feed [her]self, [or] [u]nab[le] to take care of personal hygiene" (see id.; see also 20 C.F.R. pt. 404, subpt. P, app. 1, 100(B)(2)c).

Furthermore, the ALJ concluded that plaintiff's "bilateral DeQuervain's tenosynovitis does not meet the criteria of section 1.02 since it does not result in an inability to perform fine and gross movements effectively as defined in section 1.00(B)(2) of the regulations" (Tr. 24). The ALJ also assigned "greater weight" to a physical capacities summary dated September 8, 2003, by Ms. Celeste Misko, P.T. (hereinafter "Ms. Misko") (Tr. 27). Ms. Misko opined that plaintiff "could use her hands for repetitive simple grasping, but not for fine manipulations on a repetitive basis  .  .  .  .  and [could] reach overhead [frequently]" (id. (see also Tr.480)).  This is not inconsistent with the findings of Ms. Oestreich.  Therefore, the evidence supports the ALJ's findings.

The ALJ found that:

> In activities of daily living, [plaintiff] has mild restrictions. She is independent in her self-care. [Plaintiff] can perform housework, prepare meals, drive, and shop. On March 10, 2007, she reported caring for her grandchild and exercising more (internal citation to Exhibit 23F: p8 [Tr. 589]). The State pays [plaintiff] for babysitting her granddaughter.

(Tr. 24). The Court notes that plaintiff testified that "I have to do my housework in separate stages. Like if I do the kitchen and the floor, that's kind of about it" (Tr. 612).

For the aforesaid reasons, and based on a review of the relevant record, the Court concludes that the ALJ did not err in concluding that plaintiff did not meet the listing requirement in paragraph 1.02 of the Listings.

### b. Listing for Impairment 12.04 Affective Disorders

According to the Listings, 12.04, Affective Disorders are:

> Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following  . . .
>
> AND
>
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;
>
> OR
>
> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:  . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, 12.04.

In this matter, plaintiff argues that the level of functional limitations attributed to her is that of "moderate[] limit[ation]" (ECF No. 11, p. 12). Therefore, even if plaintiff arguably satisfies the "A" requirements, she does not satisfy, by her own argument, two of the subsections of the "B" requirements, which is required to meet the Listing. Plaintiff does not attempt to argue that she satisfies the "C" requirement. In addition, the ALJ found that "[t]he evidence does not document any episodes of decompensation," (Tr. 24), and plaintiff has not disputed this finding.

For these reasons, and based on a review of the relevant record, the Court concludes that it was not error for the ALJ to conclude that "[plaintiff]'s mental impairment does not meet or medically equal the criteria of listing 12.04" (Tr. 24).

3.  <u>The ALJ properly found that plaintiff retained the residual functional capacity to perform light work.</u>

If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work activity or on medical factors alone, and a claimant has a severe impairment, a review is made of the claimant's residual functional capacity. Social Security Ruling "SSR" 96-8p, 1996 SSR LEXIS 5 at *3-*4. A determination regarding "residual functional capacity 'is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'" <u>Brown v. Astrue</u>, 2010 U.S. App. LEXIS 26760 at *6 (9th Cir. 2010) (per curiam) (unpublished opinion) (*quoting* <u>id.</u> at *5) (*citing* 20 C.F.R. § 416.945; <u>Reddick v. Chater</u>, 157 F.3d 715, 724 (9th Cir. 1998)); <u>see also</u> SSR 96-9p, 1996 SSR LEXIS 6. Residual functional capacity is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c).

1

The ALJ found that:

2

3

4

5

6

7

8

9

10

11

[Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she should not climb ladders, ropes or scaffolds. She can reach in all directions, including overhead, on a frequent basis. [Plaintiff] has no restriction with handling or feeling, but is limited to occasional fingering/fine manipulation. She should not work with dangerous machinery or at unprotected heights. [Plaintiff] has the mental capacity to adequately perform the mental activities generally required by competitive, remunerative, unskilled work. That is, she can understand, remember and carry out simple instructions compatible with unskilled work. [Plaintiff] has average ability to perform sustained work activities (i.e., can maintain attention, concentration, persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. [Plaintiff] can make judgments commensurate with the functions of unskilled work (i.e., simple work-related decisions), respond appropriately to supervision, coworkers and work situations, and deal with changes all within a routing work setting.

12

(Tr. 25).

13

14

Plaintiff contends that the ALJ erred in finding that she was capable of performing light

15

work because "numerous physical residual functional capacity assessments or physical capacity

16

evaluations contained in her file  . . . . place her in the light to sedentary weight handling range

17

and show limitations in reaching, handling and fingering; [h]owever these reaching limitations

18

do not appear to have been taken into consideration as part of her [residual functional capacity]"

19

(ECF No. 11, p. 13). Plaintiff also contends the ALJ erred because he failed to take into

20

consideration the fact that plaintiff "has some **moderate** limitations as a result of her mental

21

22

health conditions" (Tr. 13 (emphases in original) (*citing* Tr. 286-90)).

23

First, the Court notes that the ALJ limited plaintiff to light work, and limited her to only

24

"occasional fingering/fine manipulation" (Tr. 25). The Court also notes that one of the physical

25

residual functional capacity assessments cited by plaintiff indicates that plaintiff's ability

26

regarding "handling (gross manipulation)" as well as "fingering (fine manipulation)" was

REPORT AND RECOMMENDATION - 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

"unlimited" (Tr. 261). The Court already has discussed the "greater weight" assigned by the ALJ to a physical capacities summary dated September 8, 2003, by Ms. Celeste Misko, P.T. (see supra, p. 19; see also Tr. 27), in which Ms. Misko opined that plaintiff "could use her hands for repetitive simple grasping . . . . on a repetitive basis . . . . and [could] reach overhead [frequently] (id. (see also Tr.480)). In addition, the Court also already has cited the medical evidence supplied by examining and reviewing physicians, Drs. William Furrer, Jr., M.D., orthopedic surgeon, and John A. Maxwell, M.D., neurosurgeon (hereinafter, jointly, "Drs. Furrer and Maxwell"), see supra section 1.b, including their conclusion that "[plaintiff]'s physical examination is extremely functional" (see Tr. 445).

This report, which was prepared at the request of the Washington Department of Labor and Industries by Drs. Furrer and Maxwell included an extensive and very thorough summary of plaintiff's medical history[1] (see Tr. 428-46). For example, they note the observation by Dr. Hassan on February 13, 2002, that plaintiff had "no problems other than the hands," and that she exhibited on examination "full range of motion about the shoulders" (Tr. 431). Drs. Furrer and Maxwell also discussed an "Independent Medical Examination [] performed by [Dr.] Robert P. Campbell, M.D., M.P.H., Occupational Medicine, on June 14, 2003, and Dr. Campbell's observation that plaintiff had "some residuals that were difficult to evaluate due to [plaintiff's] high functionality and extreme stress" (Tr. 435). The report by Drs. Furrer and Maxwell also indicate the assessment by Dr. Michelle Zhong, M.D., in 2003 that plaintiff "was able to lift 20 pounds from floor to waist and 15 pounds waist to shoulder and 15 pounds overhead" (id.) This joint report includes the September 17, 2004 interpretation of electrodiagnostic studies of

_____

[1] Based on a review of the relevant record, the Court concludes that the joint report by Drs. Furrer and Maxwell accurately describe the reports and assessments by other physicians and medical providers (see Tr. 428-46).

plaintiff's upper extremities by Dr. Irfan A. Ansari, M.D., physical medicine and rehabilitation, as "essentially normal" (Tr. 437). Also noted is the observation by Dr. Alan B. Thomas, M.D., orthopedic surgeon, on February 27, 2006, that plaintiff "had a full range of motion about the elbows and wrists" (Tr. 440; see also Tr. 400). This joint report also noted the independent evaluation by Dr. Sean D. Ghidella, M.D., orthopedic surgeon, and his observation of plaintiff's "significant symptom magnification," as well as his assessment on May 3, 2005, that plaintiff suffered from "no ratable substantiated impairment" (Tr. 438-39).

Drs. Ferrer and Maxwell performed their own physical examination of plaintiff (Tr. 443-444). They observed "a full range of motion about the shoulders and elbows" (Tr. 443). As already mentioned, they concluded that plaintiff's "physical examination is extremely functional" (Tr. 445). They also concluded that

> Using the AMA Guides to the Evaluation of Permanent Impairment, Fifth Edition, [plaintiff] is determined to have a **0 percent permanent partial physical impairment of each upper extremity**.
> There is no permanent partial physical impairment regarding [plaintiff]'s cervical spine due to her preexistent cervical spondylosis.

(Tr. 445 (emphasis added).)

Regarding mental impairments, the Court already has noted plaintiff's apparent positive response to anti-depressant medication, as well as the diagnostic impression by a group of medical sources, doctors and other sources that plaintiff's "mood now in preliminary state of significant improvement/remission" (see supra, p. 16; see also supra, sections 1.f-h, 2.b; Tr. 498).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v.

1   Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th

2   Cir. 1980))).  It is not the job of the court to reweigh the evidence: If the evidence "is susceptible

3   to more than one rational interpretation," including one that supports the decision of the

4   Commissioner, the Commissioner's conclusion "must be upheld." Thomas v. Barnhart, 278 F.3d

5   947, 954 (9th Cir. 2002) (*citing* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599, 601

6   (9th Cir. 1999)). Determining whether inconsistencies in the medical evidence "are material (or

7   are in fact inconsistencies at all) and whether certain factors are relevant to discount" the

8   opinions of medical experts "falls within this responsibility." Morgan, supra, 169 F.3d at 603.

9   The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d  at

10  642 (citations omitted).

11          Even if a treating or examining physician's opinion is contradicted, that opinion "can

12  only be rejected for specific and legitimate reasons that are supported by substantial evidence in

13  the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043

14  (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary

15  of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

16  findings." Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th

17  Cir. 1989)).

18          In this matter, the medical evidence in the record is not conclusive. The ALJ discussed in

19  detail the conflicting medical evidence, stated his interpretations thereof, and made findings (see

20  Tr. 21-24, 26-29); see also Reddick, supra, 157 F.3d at 725. Based on the relevant record, the

21  Court concludes that the ALJ did not err in determining plaintiff's residual functional capacity.

22

23

24

25

26

4. **The ALJ properly found that plaintiff was capable of performing her past relevant work as a housekeeper.**

At step-four in the sequential disability evaluation process, the ALJ must determine if an impairment prevents the claimant from doing past relevant work. 20 C.F.R. § 404.1520(e).   If the ALJ finds that the claimant has not shown an incapability of performing past relevant work, the claimant is not disabled for social security purposes and the evaluation process ends. 20 C.F.R. § 404.1520(f).  Plaintiff bears the burden to establish the inability to perform past work. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).

Plaintiff contends that she cannot perform any of her past relevant work because a vocational determination made December 24, 2001 indicated that she was incapable of performing her past relevant work (ECF No. 11, p. 14 (*citing* Tr. 107)), because "Dr. Hassan has also precluded her from performing her PRW" (id. (*citing* Tr. 309-13)), and because "she was unsuccessful and returning to work as a re-use tech" (id. at p. 15, (*citing* Tr. 214-22)). The Court notes that the vocational determination cited by plaintiff indicates that although plaintiff is not capable of her past relevant work, that she is "not disabled" due to her ability to do "other work" (Tr. 107)[2].

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  Reddick, supra, 157 F.3d at 722. In this matter, the medical evidence is not conclusive regarding whether or not plaintiff can return to her past relevant work as a housekeeper. The ALJ relied on the testimony from the vocational expert and the opinion of Ms. Misko (see Tr. 29). The vocational expert testified that a person with a similar residual functional capacity as plaintiff (except that it contained limitations to only occasional reaching)

---

[2]  Similarly, although Dr. Alan B. Thomas, M.D., indicated an opinion inconsistent with a determination that plaintiff could return to her previous relevant work, he nevertheless indicated his plan to release plaintiff to "a sedentary job" (Tr. 402).

could not perform plaintiff's past relevant work "specifically because [] the reaching would be frequent, especially between the waist and shoulder level" (Tr. 630). However, the ALJ relied on the opinion of "Ms. Misko [] that [plaintiff] could reach overhead on a frequent basis," and did not limit plaintiff functionally regarding her ability to "reach in all directions, including overhead, on a frequent basis" (Tr. 25, 29; see also Tr. 480 (opining that plaintiff could "reach overhead [frequently]")). Therefore, the ALJ found plaintiff capable of her past relevant work as a housekeeper (Tr. 29). The Court additionally notes that in the context of plaintiff's residual functional capacity, the Court already has discussed some of the medical evidence supporting plaintiff's functional abilities with regard to her upper extremities see supra, section 3, pp. 23-24.

Based on a review of the relevant record, the Court finds that the ALJ's conclusion regarding plaintiff's ability to perform her past relevant work as a housekeeper is supported by substantial evidence in the record as a whole.

5. Defendant's ultimate decision is based on substantial evidence and this matter should be affirmed.

Plaintiff contends without a single citation to the record that "the Commissioner's decision is contrary to the overwhelming weight of evidence contained in the record, it lacks evidentiary support, and some of the expert records and opinion contained within the file were essentially ignored. The substantial evidence in this case clearly supports [plaintiff]'s application for disability" (see ECF No. 11, pp. 15-16). Because plaintiff provides no support for this argument, it is difficult for the Court to know what "overwhelming weight of evidence" plaintiff contends is contrary to the ALJ's decision, or which "expert records" or opinions "were essentially ignored" (see id.).

1    Based on a review of the relevant record, and based on the aforesaid reasons, the Court

2    concludes that the decision of the ALJ is supported by substantial evidence in the record. See

3    Magallanes, supra, 881 F.2d at 750 ("Substantial evidence" is more than a scintilla, less than a

4    preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to

5    support a conclusion'").

6                                       CONCLUSION

7

8            The ALJ properly considered plaintiff's severe impairments, and properly determined

9    that plaintiff's impairments or combination of impairments did not meet or equal one of the

10   listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In addition, the ALJ's finding

11   that plaintiff had the residual functional capacity for light work, with the assessed limitations,

12   specifically her past relevant work as a housekeeper, is supported by substantial evidence in the

13   record as a whole. Therefore, the undersigned recommends that the ALJ's written decision be

14   AFFIRMED.

15

16           Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

17   fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P.

18   6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

19   review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

20   imposed by Rule 72(b), the clerk is directed to set the matter for consideration on June 3, 2011,

21   as noted in the caption.

22

23           Dated this 11th day of May, 2011.

24

25   _____

26   J. Richard Creatura
     United States Magistrate Judge

REPORT AND RECOMMENDATION - 28